IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ARUNEE RYLES,                                             No. C 04-5326 SBA

    Plaintiff,

v.                                                                    **ORDER**

PALACE HOTEL et al.,                                   [Docket No. 31]

    Defendants.
_____/

    This matter comes before the Court on Defendant's Motion to Enforce Settlement Agreement.

## **BACKGROUND**

    On December 16, 2004, Plaintiff Arunee Ryles filed a complaint alleging that she had been discriminated against by Defendant, her employer, on the basis of age, sex, race, and national origin. Ryles claimed violations of Title VII and FEHA, and asserted state tort claims. In March 2006, after some discovery had taken place, the parties agreed to participate in mediation. van Krieken Decl. ¶ 3. Following a full-day session with a private mediator, and some further discussions, the parties agreed to a settlement on May 12, 2006. *Id*. at ¶ 5. The same day, Defendant's counsel prepared a draft Settlement Agreement and faxed it to Plaintiff's counsel. The mediator sent a letter to both parties on May 15, 2006, summarizing the terms of the settlement. *Id*. at ¶ 6. On May 21, 2006, Plaintiff's counsel left Defendant's counsel a voice mail message with some proposed revisions to the settlement agreement. She incorporated those revisions and faxed back a new version of the Agreement. *Id*. at ¶ 7. Plaintiff's counsel, Stanley Hilton, called to request additional revisions on June 14, 2006. Mr. Hilton indicated that he was meeting with Ms. Ryles at the time of the conversation.

    After Defendant's counsel, Ms. van Krieken, made futher changes to the Agreement, Mr. Hilton faxed back a copy which was signed by Plaintiff, but which contained many strike-throughs not agreed upon by the parties. *See* van Krieken Decl. Ex. F. Hilton indicated that Ryles had made the strike-throughs herself. Ms. van Krieken called to say that the changes were not acceptable. *Id*. at ¶ 9. On

1 July 9, 2006, Mr. Hilton called to request further changes; Ms. van Krieken made some of them and
2 faxed back a revised version. *Id*. at ¶ 10.

3   Ms. Ryles states that Mr. Hiltonpressured her to sign the Agreement, and told her that if she did
4 not sign, "the judge would throw my case out and I would be responsible for $10,000." Ryles Decl. at
5 ¶ 26. Hilton allegedly told Ryles that they could not meet with the mediator again, and when Ryles
6 faxed the version of the agreement back to Hilton with her strike-throughs, he called her and yelled at
7 her. *Id*. at ¶ 30. On June 30, 2006, Hilton left Ryles a message stating that she should either sign the
8 agreement or release him. *Id*. at ¶ 31. On July 15, Ryles emailed Hilton and told him that she needed
9 to review the new agreement. He then called to say that if she did not sign, "then [she] would have to
10 pay $10,000 that week, that [she would] lose [her] house, and that [she] had a zero chance of winning,
11 and that the judge would never even look twice at [her] case." *Id*. at ¶ 33. On July 20, 2006, during an
12 apparently related workers' compensation proceeding, Hilton gave Ryles the final agreement and, she
13 says, "wanted me to sign it right then and there without my even reading it." *Id*. at ¶ 35. Ryles states
14 that Hilton told her, in front of Defendant's workers' compensation attorney, that she would lose the
15 case if she did not sign the agreement. *Id*. Hilton called Ryles on July 21, and told her that she needed
16 to sign the agreement by 5:00 p.m. that day. *Id*. at ¶ 36. Ryles signed the agreement on July 21, 2006,
17 and Hilton faxed it to van Krieken that same day. van Krieken Decl. at ¶ 11.

18   Ryles states that she had a very small role in determining the terms of the agreement "other than
19 to read it." She states that some of the changes she wanted were incorporated, but there were parts of
20 the final agreement that she did not want. She states that she felt she had no choice but to sign due to
21 the economic pressure "to the point of duress" placed on her by her attorney. Ryles Decl. at ¶ 43.

22   Ryles sent a letter to the Court on July 24, 2006, stating that she felt her case had been
23 improperly handled by her attorney. She said Hilton failed to take depositions, showed up late for
24 mediation and court, and cancelled appointments with her at the last minute. Ryles also alleged that
25 Hilton pressured and threatened her, saying that she would lose the case, end up paying two or three
26 hundred thousand dollars in attorneys' fees and losing her home if she did not sign the settlement
27 agreement.

28   On July 27, 2006, Hilton notified van Krieken that Ryles wished to rescind the Settlement

2

1 Agreement. Hilton's fax stated that, "[u]nder the law, since she is over 40 years old and this notice is
2 being sent within 7 days of execution, the Settlement Agreement must be rescinded." van Krieken Decl.
3 Ex. I. The next day, van Krieken sent a letter to Hilton stating that there was no seven-day revocation
4 period in the Agreement or under the law, and that Ryles could not rescind or revoke the Agreement.
5 *Id*. at ¶ 13. On Jul 28, 2006, Ryles sent another letter to the Court, further complaining about her
6 attorney's conduct. She states that Hilton told her that "judge Armstrong . . . is known to favor
7 employers" and would give her "a zero chance for a favorable outcome and not even a chance to present
8 the case." Ryles stated that she was confused and anxious, and that she was trying to find a new
9 attorney.

10 Defendant's counsel sent Hilton a Stipulation of Dismissal, which has not been returned. The
11 case was not dismised by the Court.

## LEGAL STANDARDS

13 The Court has the inherent power to enforce a settlement agreement in any action pending before
14 it. *Decanay v. Mendoza*, 573 F.2d 1075, 1078 (9th Cir. 1978).[1]

15 Release of claims under Title VII must be "voluntary, deliberate, and informed." *Stroman v.*
16 *West Coast Grocery Co.*, 884 F.2d 458, 462 (9th Cir. 1989). Whether this standard was met is
17 determined based on the totality of the circumstances. In particular, the Court must consider the clarity
18 and lack of ambiguity of the agreement, the plaintiff's education and business experience, whether the
19 atmosphere for the execution of the agreement was coercive, and whether the plaintiff had the benefit
20 of counsel. *Id*.[2]

---

[1] The parties do not raise the issue of jurisdiction, but the Court may consider it sua sponte. *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1135 (9th Cir. 1997). The Supreme Court held in *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375 (1994) that a court does not have jurisdiction to enforce a settlement agreement in a dismissed lawsuit, unless the court explicitly retained jurisdiction to enforce the agreement, in which case ancillary jurisdiction may exist. However, the *Kokkonen* rule does not apply when the case has not yet been dismissed. This case was never dismissed, so the Court may properly assert jurisdiction over the instant Motion.

[2] Much of Defendant's argument is based on the assumption that California contract law applies. However, the Ninth Circuit has held that the "interpretation and validity of a release of claims under Title VII is governed by federal law." *Stroman*, 884 F.2d at 461. This rule has been applied even where the settlement agreement covers both Title VII and state law claims. *See Aikins v. Tosco Refining Co.*, 1999 WL 179686 (N.D. Cal. 1999). Thus, the Court will apply the standards

3

## **ANALYSIS**

All but one of the *Stroman* factors weigh in favor of enforcing the Agreement.[3] Plaintiff was represented by counsel, and although the Agreement contains legal language, it is fairly clear and unambiguous. It appears that English is not Plaintiff's first language, but she is an Accounts Receivable Clerk, a position that most likely requires some education. She is in treatment for depression and anxiety, and takes several medications for those conditions. Ryles Decl. at ¶¶ 18, 44. Although Plaintiff's counsel argues that she was not mentally competent to sign the agreement, the Court is not persuaded.

The remaining question is whether Plaintiff was coerced into executing the Agreement. Defendant argues, based on California law, that Plaintiff should not be able to repudiate the agreement based on coercion exercised by her own attorney – rather, the agreement is binding unless Defendant coerced Plaintiff into signing it. However, as discussed, federal law applies here, and *Stroman* simply states that the Court should consider whether there was "a noncoercive atmosphere for the execution of the release." Given Plaintiff's allegations regarding the intense pressure applied by Hilton, the Court cannot conclude that the Agreement was executed in a noncoercive atmosphere. Hilton threatened Plaintiff with loss of her home, told her that she would definitely lose the case, made misleading remarks about how the Court was likely to treat her case, and threatened to withdraw from the representation if she did not sign the Agreement. The fact that Plaintiff sent two letters two the Court, one several days before attempting to rescind the agreement and the other the same day as the attempted rescission, adds credibility to her allegations regarding the improper and coercive behavior of her attorney. Defendant suggests that Plaintiff's remedy is to sue Hilton for malpractice. The Court disagrees. If Mr. Hilton coerced Ryles into signing the agreement, she is allowed to rescind. *See Aikins*, 1999 WL 179686 at

---

articulated in *Stroman* to determine the enforceability of the agreement.

[3]The parties devote much of their discussion to the statutory requirements for settlement of claims under ADEA. However, the Complaint does not specifically allege that Defendant violated ADEA, 29 U.S.C. § 621 *et seq*. It simply states that Defendant violated Title VII, 42 U.S.C. § 2000e *et seq.*, and that Plaintiff was discriminated against on the basis of age. Because the Court finds that the Motion to Enforce Settlement should be denied based on the *Stroman* factors, and because it is arguable whether the statutory provisions for settlement of ADEA claims even apply in this case, the Court will not address those provisions.

4

*2 (stating the elements of economic duress: "(1) sufficiently coercive action; (2) against a reasonably prudent person in plaintiff's economic position who has no reasonable alternative but to succumb to the coercion; (3) the offender is aware of this economic vulnerability; and (4) the coercion actually causes the person to endorse a release.").

Accordingly, IT IS HEREBY ORDERED THAT Defendant's Motion to Enforce Settlement is DENIED.

IT IS FURTHER ORDERED THAT the Case Management Conference scheduled for October 24, 2006 at 1:00 p.m. is continued to **October 26, 2006 at 4:00 p.m.** The parties shall meet and confer prior to the conference and shall prepare a joint Case Management Conference Statement, which shall be filed no later than **October 19, 2006**. Counsel for Plaintiff shall be responsible for filing the Case Management Conference Statement, as well as for arranging the Case Management Conference call. All parties shall be on the line and shall call (510) 637-3559 at the above indicated date and time.

IT IS SO ORDERED.

Dated: 10/4/06                              SAUNDRA BROWN ARMSTRONG
                                            United States District Judge